WILLIAM C. HUTCHINSON, PLAINTIFF IN ERROR, v. WILLIAM WARWICK, DEFENDANT IN ERROR.

On error to the Supreme Court. For opinion of the Supreme Court, see 16 *Vroom* 61.

For the plaintiff in error, *Chilion Robbins.*

For the defendant in error, *G. D. W. Vroom.*

THE CHANCELLOR. The judgment of the Supreme Court in this case should be affirmed for the reasons given by that court.

DIXON, J. (dissenting.) Hutchinson, the plaintiff below, on June 5th, 1880, by his agent, sold a bay mare to Magahan for $90, for which the latter gave his two notes of $45 each and a mortgage, securing the same, on the mare sold and a sorrel mare belonging to him. Magahan was a hackman, and wanted the mare to use in his business around railroads; hence it was important to him that she should be accustomed to locomotives, and to effect the sale the agent had represented that she was not afraid of the cars, but was gentle and fit for a lady to drive. This representation the agent knew to be false, but his principal, Hutchinson, had not authorized it, and did not know that it was made.

About July 20th, 1880, the plaintiff, Hutchinson, and the defendant, Warwick, bargained for the sale of these notes and mortgage. One of the notes was then past due and protested, and in the bargaining Hutchinson said to Warwick that there might be trouble about the notes and mortgage; thereupon Warwick orally agreed with Hutchinson that if he would sell him the notes and mortgage for $45, he, Warwick, "would take all risks, would save him, Hutchinson, harmless, and would not get him into any scrape." On these terms the sale was concluded, the protested note was handed over, and,

shortly afterwards, the second note, having been in the meantime also protested, was likewise delivered. The mortgage, being on file, was not delivered, nor was it or the notes formally assigned, but Hutchinson authorized Warwick to use them all as he himself had had the right to do. No part of the $45 was paid until after the sales hereinafter mentioned.

About July 30th, 1880, Warwick, using the name of Hutchinson, brought replevin on his mortgage against Magahan for the two mares, and obtained possession of them. Thereupon Magahan notified Warwick that the bay mare had been sold to him for the notes and mortgage on a fraudulent representation, that he desired and offered to rescind the sale and surrender the bay mare. Warwick refused to permit the rescission. Soon afterwards, Warwick, at private sale, sold the sorrel mare for $80 and the bay mare for $55, without making any attempt to sell them at public sale. The sorrel mare was then worth $150 and the bay mare $90. In January, 1881, Warwick discontinued the replevin suit.

In February, 1881, Magahan commenced an action of trespass on the case against Hutchinson, alleging the sale of the bay mare on the false representations and the giving therefor of the notes and mortgage, Magahan's offer to rescind on the discovery of the fraud, Hutchinson's refusal, and his conversion of both mares to his own use. Warwick conducted the defence of this suit in Hutchinson's name. The judgment was in Magahan's favor, for $150 damages and $7.13 costs.

Hutchinson, having paid that judgment, brought the present suit against Warwick, claiming indemnity under Warwick's agreement, above recited. He succeeded before the justice and in the Common Pleas, but in the Supreme Court his judgment was reversed upon the ground that the contract of indemnity was to be regarded as prospective only, relating to acts done under the assignment, while the damages recovered by Magahan against Hutchinson resulted, in law, from the fraudulent representation only, which preceded the assignment.

This last proposition seems to me to be erroneous. Those

damages did not, in law or in fact, result from the fraudulent representations. There are several reasons for this statement.

First. The case shows, and in the trial of Magahan v. Hutchinson it appeared as a fact, that the fraudulent representations to the former were made by Hutchinson's agent, Hutchinson himself being innocent of the transaction. Before the present case was decided by the Supreme Court, it had become settled law in that court that "an innocent vendor cannot be sued in tort for the fraud of his agent in effecting a sale; that in such a juncture the aggrieved vendee has at law two, and only two, remedies: the one being a rescission of the contract of sale and a reclamation of the money paid by him from the vendor; the other, a suit against the agent founded on the deceit." *Kennedy* v. *McKay*, 14 *Vroom* 288. The action of Magahan v. Hutchinson was not in pursuit of either of these remedies, and consequently, if it was rested on the fraud, it was untenable.

Secondly. The state of demand in Magahan v. Hutchinson does not purport to claim damages for the fraudulent representations. These representations are indeed alleged, but only by way of inducement, to show Magahan's right to rescind the bargain and revoke his mortgage, and thus establish the illegality of the acts by which he was deprived of his sorrel mare. The pleading sets out the fraudulent sale and the giving of the mortgage thereon, the effort of Magahan to rescind, Hutchinson's refusal to acquiesce in the rescission and his conversion of the mares under the mortgage. In an action for the fraud none of these averments save the first could have had any legal place. There is no suggestion in the complaint that the fraud gave Magahan any other right against Hutchinson than that of rescission, or that his damages sprang out of any other wrong than the conversion of his mare.

Thirdly. If Magahan's right of action against Hutchinson for the fraud were conceded, his damages would be only the difference between the value of the bay mare, as she was when sold, and what would have been her value if she had been as represented. There was not, in the case of Magahan

*v.* Hutchinson, the slightest evidence as to this difference, yet the judgment was for $150. Such a result is inexplicable on the theory that the suit was based upon the fraud, but it was manifestly just if the action was brought for the conversion of the sorrel mare.

Turning, then, from the view taken in the Supreme Court, let us see whether the case evinces such conduct on the part of Warwick as was a breach of his contract to indemnify, and caused the damages which Hutchinson had to pay. I think it does, in two respects.

First. On the demand of Magahan, Warwick was bound to assent to the rescission of the original sale, and to surrender the notes and the sorrel mare. The citation of *Kennedy* v. *McKay, ubi supra,* is sufficient to show that this would have been Hutchinson's duty had he been in possession. Warwick's rights were no better than Hutchinson's. Warwick was not a *bona fide* holder of the notes for value before maturity. When he bargained for their purchase he had actual notice from Hutchinson that there might be trouble about them and the mortgage. He knew that all these instruments had been given in the same transaction, and one of the notes was already dishonored when he bought them. He gave no value for them until both notes were past due and he had been informed that they had been procured by fraud. So that he was affected by every ingredient of a tainted title. It was therefore his legal duty to acquiesce in the rescission. His refusal to do so, and his retention of Magahan's mare, constituted the wrong for which Hutchinson was sued. Had that suit been brought against Warwick, he could not have escaped responsibility. It was maintainable against Hutchinson only because Warwick had acted in his name.

Secondly. If Warwick was entitled to enforce the mortgage he was bound either to sell the mares at a fair public sale or to sell them for a fair price. He did neither. He chose to sell at private sale, and realized for the bay mare $55, when it was worth $90, and for the sorrel mare $80, when it was worth $150. Had he sold the bay mare for her value,

his notes would have been thereby satisfied and Magahan would have got back his own mare without loss, and the suit against Hutchinson would not have been brought.     This illegal conduct on the part of Warwick, while it was not in law the basis of Magahan's action, was the real source of the loss which one of these parties must necessarily bear.     Warwick's contract obliges him to bear it.

These considerations, I think, make it evident that, in violation of his agreement, Warwick did "get Hutchinson into a scrape," and that he now should be compelled to "save him harmless."

In my opinion, the judgment of the Supreme Court should be reversed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, PARKER, SCUDDER, COLE, WHITAKER.     6.

*For reversal*—DIXON, KNAPP, MAGIE, CLEMENT, PATERSON.     5.